TODD M. SCHNEIDER (SBN 158253)
tschneider@schneiderwallace.com
MARK T. JOHNSON (SBN 076904)
mjohnson@schneiderwallace.com
**SCHNEIDER WALLACE COTTRELL**
**KONECKY WOTKYNS LLP**
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone:     (415) 421-7100
Facsimile:      (415) 421-7105

SHANON J. CARSON (*pro hac vice* to be filed)
scarson@bm.net
ARTHUR STOCK (*pro hac vice* to be filed)
astock@bm.net
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone:     (215) 875-4656
Facsimile:      (215) 875-4604

*Attorneys for Plaintiff*

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL SIMONOFF, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>LENOVO (UNITED STATES), INC., SUPERFISH, INC.,<br><br>              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  Violation of the Electronic Communications Privacy Act of 1986 (ECPA), 18 U.S.C. §2510, *et seq.*<br>2.  Violation of the Stored Communications Act (SCA), 18 U.S.C. §2701, *et seq.*<br>3.  Violation of the Computer Fraud and Abuse Act (CCFAA),18 U.S.C. §1030 *et. seq.*<br>4.  Trespass to Chattels<br>5.  Negligence<br>6.  Violation of California Penal Code §§ 631 and 637.2<br>7.  Violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et. seq.*<br>8.  Violation of California Business and Professions Code § 17200, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Simonoff ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants Lenovo (United States), Inc.("Lenovo") and Superfish, Inc. ("Superfish").  The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief based on the investigation of counsel as to the acts of others.

### INTRODUCTION

1.      By this action, Plaintiff Michael Simonoff, on behalf of himself and a class of similarly situated purchasers of Lenovo laptop computers, seek to redress the deliberate and virtually unprecedented actions of Lenovo and its co-conspirator, Superfish, of secretly installing intrusive, malicious and dangerous software onto Lenovo computers before selling them to unwitting consumers throughout the country. The software, known as "Superfish Visual Discovery" ("Superfish Software"), was designed by Superfish to intercept secure Web connections between the user's computer and Web sites and inject content, such as unsolicited ads, into those connections so that they would display on the user's screen.

2.      The Superfish Software operates by adding a "trusted root certificate" to the "root stores" used by the computer's internet browser, *e.g.* Windows Explorer or Firefox, telling the browser that the site can be trusted.  This allows the Superfish software to effectively create a fake ID for any website, so that it can convince the browser that it is connected to the real website, when it is actually connected to Superfish.

3.      As a result of the installation and operation of the Superfish software, users of the infected computers are subject to slower processing speeds and diminished storage space on their computers.  In addition, they are subjected to unsolicited images and advertisements purporting to be responses from the websites to which they intended to connect, when they are actually fake images and advertisements selected by Superfish. The process used by Superfish also involves the monitoring of user activity and the collection of personal information for uploading to Superfish, so it can be analyzed for the purpose of selecting advertisement to be injected into legitimate websites, thereby compromising the security and privacy of Lenovo users.

4.      Beyond the above-described injuries, the manner in which Superfish operates seriously undermines the security features of infected computers in ways that make them extremely vulnerable to attack from third parties other than Superfish.  Because Superfish replaces legitimate site certificates with its own certificate, users will not receive the notification that they otherwise would of the expiration of a website's certificate or of the fact that the site's certificate has been tampered with or is counterfeit.  In essence, any user of a Lenovo computer on which the Superfish software has been installed is stripped of the ability to trust any secure internet connection that they attempt to make.

5.      Worse yet, Superfish uses the same certificate for every site, making it vulnerable to being hijacked by third parties who identify the password for the "private key." Anyone who does so is able to sign websites and software in a manner that would be trusted by any infected Lenovo computer. And the password Superfish used is a common dictionary word and the name of a manufacturer of related software, which was easily cracked and has been published on the Internet. As a result, every user of a Lenovo computer on which Superfish has been installed is vulnerable to having their passwords, encrypted keys and confidential information stolen by third parties.

6.      The presence and operation of the Superfish software was not disclosed to purchasers of Lenovo computers and was not reasonably detectible by them, thereby allowing Superfish to engage in the process of injecting unsolicited ads and images on end-user's computers without their knowledge or prior approval. Superfish profited from this arrangement by payments from clients whose products or services were featured in the advertisements injected into websites that users visited.

7.      Technical experts publishing articles and commentaries about Lenovo's sale of computers pre-loaded with Superfish have characterized such conduct as "appalling," "reckless,"

and "evil." One author characterized Lenovo's pre-installation of Superfish on Lenovo computers as "quite possibly the single worst thing I have seen a manufacturer do to its customer base."[1]

8.    Lenovo profited from its conduct as alleged herein by a direct payment from Superfish, under an agreement whereby such payment would be made in exchange for the secret installation of Superfish software on Lenovo computers, permitting Superfish access to consumers' internet communications and private information without having to obtain the consent of such consumers. Purchasers of Lenovo laptop computers infected with Superfish software gained no meaningful benefit from the installation and operation of Superfish on their computers, and, in fact, were harmed by such actions in the manner alleged herein.

## THE PARTIES

9.    Plaintiff Michael Simonoff lives in Encino, California, in Los Angeles County. On November 29, 2014, Mr. Simonoff purchased a Lenovo Flex2 15 Lenovo laptop computer through Lenovo's website. The computer shipped to him was pre-loaded with the Superfish Software, although Mr. Simonoff was unaware of that fact at the time.

10.    Defendant Lenovo (United States), Inc. ("Lenovo") is a Delaware Corporation with its principal place of business and headquarters in Morrisville, North Carolina. Its parent corporation, Lenovo Group Limited, is a Chinese corporation headquartered in Beijing, China.

11.    Defendant Superfish, Inc. is a Delaware Corporation having its principal place of business in Palo Alto, California. Defendant Superfish develops and sells software for use on laptop or laptop computers and other platforms, including the laptop computers at issue in this action.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over the subject matter of this Complaint pursuant to the 28 U.S.C. §1331 because Plaintiffs have alleged the violation of a federal statute,

---

[1] Marc Rogers, *Lenovo installs adware on customer laptops and compromises ALL SSL.,* MARC ROGERS.ORG BLOG (Feb. 19, 2015) http://marcrogers.org/2015/02/19/lenovo-installs-adware-on-customer-laptops-and-compromises-all-ssl/ (last

28 U.S.C. §2511, et. seq. This Court may also exercise supplemental jurisdiction over the state law claims pled herein pursuant to 28 U.S.C. § 1367.

13. This Court has personal jurisdiction over the Defendants because they transact a substantial amount of business in this district, avail themselves of the markets in this district through advertisements, promotions and the sale of the Lenovo products at issue in this case and otherwise have sufficient contacts with this district to justify the exercise of jurisdiction over them by this Court.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District, including the transactions which form the underlying basis for this lawsuit. One of the Defendants, Superfish, also has its principal place of business in this district.

## FACTUAL ALLEGATIONS

15. Defendant Lenovo is one of the largest manufacturers and sellers of computers in the world, with a market share of approximately 20% of all computers. Lenovo sells the computers at issue in this action to residents throughout the United States, including California.

16. Beginning sometime prior to September of 2014 and extending through at least January of 2015, Defendant Lenovo began pre-installing an encryption-bypassing software known as Superfish Visual Discovery on a wide range of models of laptop computers that it manufactured and sold in the United States.

17. Lenovo's decision to pre-install Superfish software on its laptop computers was pursuant to an agreement with Defendant Superfish under which Superfish paid Lenovo to package the software with its laptops so that Superfish could gain direct access to Lenovo's customers' computers, the information on those computers, and communications using those computers without having to gain the end user's permission and without having to disclose the presence or operation of the Superfish Software.

18. The Superfish Software was designed and installed by Defendants in such a manner that its presence on the computer is concealed from the user. Unlike other software

programs or applications, it functions without having to be knowingly activated or opened by the user. It is unaccompanied by any screen icon and is not displayed in any menu or list of applications. In order to discover the existence or operation of the software, a user would have to search for indications of its presence in locations that most users would not look, and that do not need to be opened or viewed in order to perform ordinary tasks and operations. Neither Superfish nor Lenovo provided any disclosure of any kind to members of the proposed Classes of the pre-installation or existence of Superfish software on their computers.

19.     The Superfish software installed by Lenovo is a form of "adware", also often referred to as spyware or malware. Its purpose is to display unsolicited advertisements for goods and services to computer users.  Companies like Superfish that create and disseminate such adware typically earn a profit by payments from retailers or other sellers of goods or services. Frequently, such payments are based on the number of times an ad or image is viewed or clicked on by the computer user, encouraging the design and dissemination of adware that is inadvertently activated and displayed without the conscious effort or knowledge of end users. Superfish is believed to have such an arrangement with its customers and profited substantially from the surreptitious installation and operation of its hidden software on Lenovo's computers.

20.     The Superfish software operates by intercepting the internet connections between the computer user and legitimate websites, collecting and analyzing the information exchanged during that communication and/or on the computer, injecting advertising based on that information into legitimate pages, and displaying popup images with advertising software.

21.     In order to intercept encrypted connections (i.e. those using the "HTTPS" protocol) the Superfish software installs a trusted root CA (Certificate Authority) certificate for Superfish.  As a result, all browser-based encrypted traffic to the internet is intercepted, decrypted, and re-encrypted to the user's browser by the Superfish software. This procedure bypasses the secure connection protocol that normally occurs between the user's browser and a legitimate website, and is commonly known as a "man-in-the-middle" attack. Because the

CLASS ACTION COMPLAINT
*Michael Simonoff v. Lenovo (United States), Inc., Superfish, Inc.*

certificate used by Superfish is signed by the CA installed with the hidden Superfish software, the user's browser will not warn the user that the internet traffic is being tampered with.

22.     The Superfish Software replaces all website certificates with a single certificate. In addition, it uses a "private key" that is installed with the software and an easily-hacked password for the private key that allows it to be recovered from the software without difficulty.  The recovery of such information allows other third parties to generate a certificate for any website that will be trusted by a Superfish-infected computer regardless of the legitimacy of the website. In this way, fake websites can be created that appear to be legitimate websites, such as banking and email sites, with no warning from the browser.

23.     As a result of Defendant's conduct, Plaintiff and thousands of other purchases of Lenovo laptops have suffered harm, including, but not limited to, slower performing computers with less storage capacity than would have been available in the absence of the undisclosed pre-loaded Superfish software. They have also had their internet communications and private information scanned and monitored by Superfish, have been exposed to unsolicited ads generated or delivered by the hidden Superfish software, and have been made vulnerable to a high level of risk of attack from third party hackers and malicious, untrustworthy websites. Indeed, the security risk created by the Superfish Software is so significant that the United States Computer Emergency Readiness Team ("US-CERT") of the Department of Homeland Security issued an "Alert" advising user of Lenovo computers to uninstall the Superfish Software and remove all associated certificates and affected root certificates.  (US-CERT Alert (TA15-051A), available at https://www.us-cert.gov/ncas/alerts/TA15-051A (last viewed on March 8, 2015).

24.     In late February of 2015, Lenovo's previously undisclosed installation of the Superfish software on the laptop computers of unsuspecting purchasers, and the consequences of such conduct, came to the public's attention through various reports, articles and blogs on the internet. As just one example, the Electronic Frontier Foundation, in an article dated February 19, 2015, announced the fact that Lenovo had been shipping laptops with the Superfish software, referring to it a "horribly dangerous piece of software" and explaining that,

as a consequence, "all HTTPS security for at least Internet Explorer, Chrome, and

Safari for Windows on all of these Lenovo laptops is now broken." See, Joseph Bonneau,

Peter Eckersley and Jacob Hoffman-Andrews, Lenovo is Breaking HTTPS Security on

its Recent Laptops, electronic frontier foundation (Feb. 19, 2015),

https://www.eff.org/deeplinks/2015/02/futher-evidence-lenovo-breaking-https-security-its-

laptops. (last viewed on March 8, 2015).

25.     Despite universal criticism of Lenovo's pre-installation of Superfish on its laptops

and strong warnings of the severe security risks involved, Lenovo defended its installation of the

Superfish software as an attempt to "enhance" its customers' "user experience" and "improve the

shopping experience." Nonetheless, in recognition of criticisms and customer complaints, it

stopped preloading laptops with Superfish and made a removal tool available on its website

which would allow customers to uninstall the Software. There has been evidence, however, that

laptops pre-loaded with Superfish continued to ship after this announcement. Moreover,

uninstalling the Superfish software does not remove the root certificate, leaving customers

vulnerable to third party attacks.

## CLASS ACTION ALLEGATIONS

26.     Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case individually and on

behalf of the following proposed National Class and California Sub-Class:

National Class:

    All persons and entities in the United States that, during the period of September 1,

    2014 through the present, purchased one or more of the following models of Lenovo

    laptop computers:

    Z series: Z40-75, Z50-75, Z40-70, Z50-70

    Y series: Y430P, Y40-70, Y50-70

    U series: U330P, U430P, U330Touch, U430Touch, U530Touch

    G series: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G40-45, G50-45

    S series: S310, S410, S40-70, S415, S415 Touch, S20-30, S20-30 Touch

Flex series: Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 14(BTM), Flex2

15(BTM), Flex 10

Miix series: MIIX2-8, MIIX2-10, MIIX2-11

Yoga series: Yoga 2 Pro-13, Yoga 2-13, Yoga 2-11BTM, Yoga 2-11HSW

E series: E10-30

California Sub-Class:

All persons and entities in California that, during the period of September 1, 2014

through the present, purchased one or more of the following models of Lenovo laptop

computers:

Z series: Z40-75, Z50-75, Z40-70, Z50-70

Y series: Y430P, Y40-70, Y50-70

U series: U330P, U430P, U330Touch, U430Touch, U530Touch

G series: G410, G510, G710, G40-70, G50-70, G40-30, G50-30, G40-45, G50-45

S series: S310, S410, S40-70, S415, S415 Touch, S20-30, S20-30 Touch

Flex series: Flex2 14D, Flex2 15D, Flex2 14, Flex2 15, Flex2 14(BTM), Flex2

15(BTM), Flex 10

Miix series: MIIX2-8, MIIX2-10, MIIX2-11

Yoga series: Yoga 2 Pro-13, Yoga 2-13, Yoga 2-11BTM, Yoga 2-11HSW

E series: E10-30

27.     Excluded from the proposed National and California Sub-Classes are Defendants,

their officers, directors, agents, immediate family members and other persons or entities related to

or affiliated with Defendants or their officers or directors.  Also excluded from the proposed

Class is the judge assigned to this action.

28.     As described in the following paragraphs, each of the criteria for certification of

the proposed National Class and California Class pursuant to Rule 23(a) and (b) are satisfied.

29.     <u>Numerosity</u>. The members of the Class are so numerous that joinder of all

members is impracticable.  While the exact number of Class members is unknown to Plaintiff at

1  this time, it is known to Defendant Lenovo and is believed to be far beyond any number that

2  would make joinder possible.

3          30.    <u>Typicality</u>. Plaintiff's claims are typical of the claims of the other members of the

4  proposed Class because their claims and injuries arose from the precisely the same course of

5  unlawful conduct engaged in by Defendants. Specifically, Defendants secretly installed, or

6  arranged to have installed, the hidden Superfish software on Plaintiff's computers and the

7  computers of each Class member, causing their computer to operate more slowly, consuming

8  storage space on the computer and causing their communications to be intercepted and their

9  internet security to be compromised, giving rise to the same claims.

10         31.    <u>Adequacy</u>. Plaintiff will fairly and adequately represent the interests of the Class.

11 Plaintiff has no adverse or antagonistic interests to those of the class and has retained counsel

12 who have substantial experience in complex consumer class action litigation.  Plaintiff intends to

13 prosecute this action vigorously on behalf of the Class.

14         32.    <u>Commonality and Predominance</u>.  There are numerous questions of law and fact

15 common to Plaintiff and the Class that predominate over any questions that may affect only

16 individual Class members, including, without limitation:

17                 a.     Whether Lenovo sold computers to class members that were pre-loaded

18 with the Superfish Adware;

19                 b.     Whether, through the Superfish Adware, Defendants intercepted the

20 electronic communications of Class members and/or accessed stored communications and

21 confidential information;

22                 c.     Whether Defendants' conduct violated the Electronic Communications

23 Privacy Act, 18 U.S.C. 2510, *et seq.*

24                 d.     Whether Defendants' conduct violated Violation of the Stored

25 Communications Act (SCA), 18 U.S.C. §2701, et seq.

26                 e.     Whether Defendants' conduct violated Violation of the Computer Fraud

27 and Abuse Act (CCFAA), 18 U.S.C. §1030 et. seq.

28

f. Whether Defendants' installation and the operation of the Superfish Adware and the use of such software to undermine the security features of Class members computers constituted a trespass on the personal property or chattels of Class members;

g. Whether Defendants owed a duty to Class members to exercise reasonable care in the installation software on their computers not to expose Class members to undue or avoidable security risks in their internet communications.

h. Whether Defendants breached the duty of care owed to Class members;

i. Whether Lenovo sold and delivered the Superfish-infected computers to purchasers without disclosing the fact that the Superfish software had been installed on the laptops.

j. Whether Lenovo had a duty to disclose to purchasers that the Superfish software had been installed on the laptops they purchased.

k. Whether the existence of the Superfish software and its impact on the performance and security of the affected laptops were material facts that would have caused purchasers to refrain from purchasing the affected laptops had they been informed of those facts;

l. Whether Defendants' actions described herein violated the California Invasion of Privacy Act, Penal Code Sections 631 and 637.2;

m. Whether Defendants' conduct constituted an unlawful or unfair business practice in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

n. Whether the Defendant's installation of the Superfish software diminished the value of the computers Class members purchased from Lenovo;

o. Whether Plaintiff and other members of the Class are entitled to statutory and compensatory damages, rescission and restitution, declaratory and injunctive relief, reasonable attorneys' fees and costs.

33. Plaintiff would be an adequate representative of the Class because his interests are aligned with, and do not conflict with, the interests of the Class members he seeks to represent;

he has retained counsel competent and experienced in complex class action litigation, and more specifically, consumer class actions; and he intends to prosecute this action diligently. Plaintiff and his counsel are committed to the vigorous prosecution of this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests that are contrary to or in conflict with those of the Class they seek to represent.

34.      Plaintiff and the members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, members of the Class would find the cost of litigating their claims to be prohibitive, and would have no effective remedy at law. Because of the relatively small size of the individual Class member's claims, it would not be economical for Class members to seek legal redress for Defendant's misconduct on an individual basis. Absent a class action, Class members will continue suffer injury and will have no realistic remedy to redress such injuries. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants. Class treatment will also avoid the possibility of inconsistent outcomes that could result from a multitude of individual actions and will promote consistency and efficiency of adjudication.

## FIRST CLAIM FOR RELIEF
### Violation of the Electronic Communications Privacy Act - 28 U.S.C. 2510, *et. seq.*
### (On behalf of Plaintiffs and the National Class)

35.      Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

36.      Title I of the Electronic Communications Privacy Act, 28 U.S.C. 2510, et seq., also known as the Federal Wiretap Act, provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C §§ 2511, 2520.

37.      Defendants, using the secretly loaded Superfish software, intentionally intercepted and endeavored to intercept the electronic communications of Plaintiff and members of the

-12-

National Class with internet sites and search engines.

38. Defendants' interception of the electronic communications of the National Class was undertaken without the consent or knowledge of members of the Class and for their own economic self-interests.

39. Pursuant to 18 U.S.C. 2520, Plaintiff and members of the Class are each entitled to the following relief:

      a. Statutory damages in the amount of $50.00 per day for each day of violation, up to a maximum of $500.00 per class member;

      b. Punitive damages in an amount to be determined by the trier of fact;

      c. Declaratory, injunctive and/or other equitable relief, as appropriate;

      d. Reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### Violation of the Stored Communications Act - 18 U.S.C. §2701, *et seq.*
### (On behalf of Plaintiffs and the National Class)

40. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

41. Pursuant to 18 U.S.C. §2701, et seq. commonly known as the Stored Communications Act ("SCA"), it is unlawful for any person to intentionally access, without authorization, a facility through which an electronic communication is provided and thereby obtain, alter, or prevent authorized access to a wire or electronic communication while the communication is in storage. 18 U.S.C. §2701(a).

42. Although the SCA is principally a criminal statute, it also expressly authorizes a civil action by any person aggrieved by a knowing or intentional violation of the statute for such relief as may be appropriate. 18 U.S.C. §2707(a).

43. The Lenovo computers purchased by Plaintiff and Class members are "facilities" within the meaning of the SCA, through which electronic communications are provided.

44. Through the secret installation and operation of the Superfish software, Defendants intentionally and without authorization of Class members, accessed Class members' computers

and certain stored electronic communications on those computers. In so doing, they obtained, altered or prevented access to such communications in violation of the SCA.  Specifically, Defendants, through the Superfish software, obtained and altered certain security protocols, website certificates and other communications on Class members' computers and prevented access to stored communications designed to ensure the security of the computers.

45.     As a result of Defendants' violations of the SCA, as alleged herein, Plaintiff and the Class have been damaged in amounts to be proved at trial, including, but not limited to the costs and expenses associated with investigating the existence of Superfish on their computers and removing it from their systems, slower performance and reduced storage space on the computers, interference with personal and business communications through the internet and taking additional security precautions.

46.     Pursuant to 18 U.S.C. 2707(b) and (c), Plaintiff and members of the Class are entitled to such relief as is deemed appropriate, including, but not necessarily limited to (1) such preliminary and other equitable or declaratory relief as the Court considers appropriate, (2) actual damages plus any profits made by Defendants as a result of the violation, but in no case less than $1000.00 per class member, (3) punitive damages, and (4) reasonable attorney's fees and other litigations costs reasonably incurred.

## THIRD CLAIM FOR RELIEF
### Violation of the Computer Fraud and Abuse Act - 18 U.S.C. §§1030 *et. seq.*
### (On behalf of Plaintiffs and the National Class)

47.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

48.     Pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.,* it is unlawful for any person to:

> a.     Knowingly cause the transmission of a program, information, code or command, and as a result of such conduct, intentionally cause damage without authorization, to a protected computer;

b.    Intentionally access a protected computer without authorization, and as a result of such conduct, recklessly cause damage; or

c.    Intentionally access a protected computer without authorization, and as a result of such conduct, cause damage and loss.

49.    The computers sold by Lenovo to members of the National Class with the Superfish software pre-installed are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate or foreign commerce or communication. Specifically, all such computers were configured to connect to the internet and were used to and continue to be used in internet commerce and communications by virtue of their connection to the internet and web-sites and web-site sponsors throughout the country and in foreign countries.

50.    Pursuant to 18 U.S.C. §§ 1030(g), any person who suffers damages or loss by reason of a violation of the CFFA may maintain a civil action against the violator where the alleged conduct involves loss to 1 or more persons during any 1-year period aggregating at least $5,000 in value. 18 U.S.C. § 1030(g); 18 U.S.C. §1030(4)(A)(i)(I). Damages include any impairment to the integrity or availability of data, a program, a system, or information. 18 U.S.C. § (e)(7).

51.    As a result of Defendants conduct in violation of the CFAA, members of the class have suffered losses and damages in an aggregate amount that exceeds $5,000. Such aggregate damages includes the diminished security and integrity of their computers, time, labor and money spent to investigate and remove the intrusive and dangerous Superfish software, the slower performance of their computers, the loss of business and personal opportunities and good will, the loss of time spent viewing and navigating away from sites and images to which they were re-directed, and the costs of replacing affected computers that were no longer trustworthy as a result of the security risks and vulnerability caused by the installation and operation of the Superfish software and the diminished value of their computers as a result of the installation of the Superfish software. Plaintiff and Class members also paid for a computer that they would not had purchased had then known of the secret installation of the Superfish Software and the

consequences and risks associated with the installation of such software.

52.     Based on Defendants' violation of the CFAA, Plaintiff seeks the recovery of compensatory damages and injunctive relief on behalf of themselves and Class Members.

### FOURTH CLAIM FOR RELIEF
**Trespass to Chattels**
**(on behalf of Plaintiff and the National Class)**

53.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

54.     At all relevant times herein, Defendants, by means of the secretly-installed Superfish software, intentionally interfered with and deprived Plaintiff and National Class members of the full use and enjoyment of their Lenovo computers. Specifically, by their use of the Superfish Software, Defendants intercepted Class member communications with web sites, injected unsolicited advertisements into web sites or re-directed the computer to another site or image, utilized system resources for purposes not intended by the user, undermined, defeated and modified existing security protocols, and exposed Plaintiff and Class members to the disclosure of their electronic communications.  Such conduct harmed Class members' computers and diminished their quality, condition and value, constituting a trespass to chattels in violation of the common law.

55.     As a direct result of Defendants' conduct alleged herein, Plaintiff and members of the class suffered harm and are seek damages in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
**Negligence**
**(On Behalf of Plaintiff and the National Class)**

56.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

57.     Defendants had a duty to Plaintiff and the Class to exercise reasonable care in the design, installation, testing, configuration and manufacturing of Lenovo computers and Superfish software such that Class members would not be exposed to reasonably avoidable security risks in the use of their computers to connect to the internet.

-16-

58.     Defendants breached their duty to Class members by designing and installing software on the Lenovo computers that they knew or should have known would operate in such a way as to undermine ordinary security protocols and make the computers extremely vulnerable to security breaches, the unauthorized disclosure of private, personal information and damage to the computer hardware and/or software.

59.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class suffered damages in the form of computers with compromised and ineffective security features, slower processing speeds and less available storage than they would have had but for Defendants' conduct. Plaintiff and Class members are, therefore, entitled to an award of damages in and amount to be proved at trial.

## SIXTH CLAIM FOR RELIEF
### Violation of California Penal Code §§ 631 and 631.7
### (On behalf of Plaintiff and the California Sub-class)

60.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs

61.     Pursuant to California's Invasion of Privacy Act, Penal Code §§ 630, et *seq.* it is unlawful for any person to:

   a.     intentionally make an unauthorized connection, by means of any machine, instrument, or contrivance, or in any other manner, with any telegraph, or telephone wire, line, cable or instrument;

   b.     willfully and without the consent of all parties to a communication or in any unauthorized manner, read or attempt to read or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within the state;

   c.     use, or attempt to use, in any manner, or for any purpose, or to communicate in any way, any information obtained by the above-described means;

d. aid, agree with, employ, or conspire with any person or persons to unlawfully do, or permit, or cause to be done any of the acts described above.

62. California Penal Code Section 637.2 authorizes any person who has been injured by a violation of the Invasion of Privacy Act to bring an action against the person who committed the violation and seek damages in the greater amount of (1) Five thousand dollars ($5,000) or (2) Three times the amount of actual damages sustained. Cal. Penal Code Section 637.2(a), (b). It is not a necessary prerequisite to such an action that the plaintiff has suffered, or be threatened with, actual damages. Cal. Penal Code Section 637.2(c).

63. Pursuant to Cal. Penal Code Section 637.2(b), any person may, in accordance with Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure, bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a).

64. Defendant's conduct alleged herein violated California Penal Code Section 637.2 in that Defendants, through the design, installation and operation of the Superfish software, intentionally made unauthorized connections to Class members' computers and internet connections, willfully and without the consent of Class members, read or attempt to read or to learn the contents their communications while in transit or being sent from or received within the state of California.

65. Defendants also violated Section 637.2 by using or attempting to use or communicate the information obtained from Plaintiffs' and Class members' computers through the Superfish software to inject unsolicited ads onto the displays of those computers and communicate Plaintiffs' and class members internet searches to Defendants or third parties.

66. Defendants Lenovo and Superfish conspired with one another and other unknown persons or entities and aided each other to unlawfully do, or permit, or cause to be done any of the acts described above.

67. Plaintiff and Class members have been injured by Defendants violations of Penal

Code Section 637 and are each entitled to statutory damages in the amount of $5,000 or, if greater, three times the amount of damages they actually sustained.

**SEVENTH CLAIM FOR RELIEF**
**Violation of California Civil Code §§1750, *et seq.***
**(On behalf of Plaintiff and the California Sub-class)**

68.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

69.     Plaintiff and members of the Class are "consumers" as defined by California Civil Code § 1761(d).

70.     Defendants Lenovo and Superfish are each a "person" as defined by California Civil Code § 1761(c).

71.     The Lenovo laptop computers at issue herein are "goods" as defined by California Civil Code § 1761(a).

72.     Pursuant to the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750, et seq., the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

      a.     "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . ."  Civil Code § 1770(a)(5).

      b.     "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Civil Code § 1770(a)(7).

73.     The above-described methods of competition and unfair acts of practices may be undertaken by the omission of a material fact where the person engaging in such act or practice has an obligation to disclose such fact.

74.     Class members and other purchasers of personal computers have a reasonable expectation that otherwise reputable manufacturers and sellers of such computers, such as

-19-

CLASS ACTION COMPLAINT
*MICHAEL SIMONOFF V. LENOVO (UNITED STATES), INC., SUPERFISH, INC.*

Lenovo, will not engage in deliberate actions that will unreasonably put the security of their internet communications at risk, undermine the efficiency and usability of their computers and subject them to unsolicited advertisements and images. The design, installation and activation of the Superfish software on computers sold to Plaintiffs and the Class and the consequences or potential consequences of such installation and activation, including, but not limited to, the serious compromise to the security of information and communications transmitted or stored on the computers, the slowed processing and reduced storage space of the computers, and the disruption or redirection of Class members' internet communications, were material facts in Class members' purchase of the Lenovo computers. Had they known of the installation of the Superfish Software on their computers, Plaintiffs and other Class members would not have purchased such computers or would not have paid the amounts that they paid for the computers.

75. Defendants had exclusive knowledge of the installation of Superfish on the computers sold to members of the Class and/or of the consequences or potential consequences of the presence and activation of such software on those computers. Such facts were not known or reasonably accessible to Plaintiffs and members of the Class because they were not disclosed to them by Defendants and were not apparent from the use or operation of the computers by Class members. In fact, Defendants actively concealed these material facts from Class members by making the Superfish software invisible to the end user, with no screen icons or other user interface and no obvious indication of the existence or operation of the software on the computer.

76. By this action, Plaintiff seeks declaratory injunctive relief, including an order finding that the conduct of Defendants alleged herein is in violation of California Civil Code Section 1750 et seq. and prohibiting Defendants from installing Superfish Software in Lenovo computers and selling such computers to consumer without full disclosure of such installation and the consequences of such installation. Plaintiff also seeks such other equitable remedies as the court may find appropriate, including rescission and/or an order that Defendants replace or otherwise repair the computers at issue, removing all aspects of the Superfish software and ensuring the restoration and effectiveness of all security features of the computers as they would

have existed in the absence of the Superfish Software.

77.     Pursuant to California Civil Code Section 1782, Plaintiff intends to notify Defendants of the alleged violations of the CLRA and demand that Defendants correct, repair, replace or otherwise rectify the injuries caused by the installation of Superfish software on Lenovo computers sold to Class members. Unless Defendants, within the time allowed by statute, make reasonable efforts to identify Class members and notify them of the actions they will take on request to take corrective action, Plaintiff intends to amend their Complaint to request damages pursuant to Civil Code § 1782(d).

78.     Plaintiff seeks an injunction or other equitable relief requiring that Lenovo restore the condition of Class Members' computers to what is was prior to the installation of the Superfish Software, replace the computers at the request of Class members with computers that never had Superfish Software installed or take such other corrective measures as are deemed appropriate.

79.     Plaintiff also seeks an award of costs and attorneys' fees pursuant to Civil Code § 1780(d).

## EIGHTH CLAIM FOR RELIEF
### Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*
### (On behalf of Plaintiff and the California Sub-class)

80.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the above paragraphs.

81.     Defendant's conduct alleged herein, including the surreptitious installation of Superfish software on Class members' computers without their consent or knowledge, the design and use of that software to undermine or circumvent the security features of Class members' computers, redirect internet searches and inject unsolicited ads on their computers, and the collection and use of private information by means of the Superfish software, is unfair, unethical and injurious to Plaintiff and members of the Class.

82.     Defendants' conduct as alleged herein is also unlawful within the meaning of Business and Professions Code § 17200 et seq. because it violates the Electronic Communications

Privacy Act of 1986 (ECPA), 18 U.S.C. §2510, et seq., the Stored Communications Act (SCA), 18 U.S.C. 2701, et seq., the Computer Fraud and Abuse Act (CFAA) 18 U.S.C. 1030, et seq the Consumer Legal Remedies Act, California Civil Code §§ 1750, et. seq. Penal Code §§ 631 and 637.2, California Business and Profession Code §§222947.2-22947.4, California Penal Code §502 and Class members right to privacy under Article 1 of the California Constitution.

83.     Defendants conduct alleged herein also constitutes fraudulent business practices within the meaning of Section 17200 et seq. because they were designed and intended to deceive, and were likely to deceive Plaintiffs and Class members in their purchase of Lenovo computers, and did, in fact, result in their purchase of computers having dangerous and disruptive software.

84.     Plaintiff and members of the Class have suffered economic injury and loss of money as a result of Defendant's unfair, unlawful, and/ or fraudulent business acts and practices. Specifically, as a result of Defendants' conduct, Plaintiff and members of the Class unknowingly purchased computers that lacked adequate security features, allowed their communications and other personal information to be intercepted, collected and/or disrupted, and operated more slowly and had less storage space than they would have but for Defendants' conduct. Had they known the truth, Plaintiff and Class members would not have purchased such computers or would not have paid the amounts that they paid for the computers.

85.     As a direct and proximate result of Defendant's unfair, unlawful, or fraudulent business practices, Defendants have also been unjustly enriched. Specifically, on information and belief, Defendant Lenovo received compensation from Defendant Superfish for agreeing to install its Software on Lenovo's computers without Class members' knowledge or consent. Similarly, Defendant Superfish benefitted financially from the security-thwarting design of its software and by Lenovo's surreptitious installation of that software on Class member computers through payments made by Superfish clients seeking exposure of their products through such software. By its deceptive practices and the circumventing of the internet's security protocols, Superfish was able to maximize such exposure for its clients, and payments to itself, without having to convince Class members to utilize the Superfish software. Thus, Defendants unjustly benefited financially

1   from their unfair, unlawful, and deceptive practices while Plaintiff and Class members' suffered

2   harm from such conduct.

3       86.     Pursuant to Bus. & Prof. Code § 17204, Plaintiff seeks and is entitled to rescission,

4   restitution and such other equitable remedies as the court deems appropriate for Defendants

5   unfair, unlawful and fraudulent business practices alleged herein.

6                               **PRAYER FOR RELIEF**

7       WHEREFORE, Plaintiffs respectfully request the following relief, individually and on

8   behalf of the Class:

9       a.     An Order certifying the Class, appointing Plaintiff as the Class Representative, and

10             appointing the undersigned counsel as Class Counsel;

11      b.     An Order declaring that Defendants, by their conduct alleged herein, have violated

12             each of the federal and state statutory provisions on which Plaintiff's claims herein

13             are based;

14      c.     An award of equitable and injunctive relief enjoining Defendant from pursuing the

15             policies, acts and practices described in this Complaint and requiring that they take

16             such corrective action as is determined to be appropriate ;

17      d.     An award of such statutory, actual and punitive damages as are authorized or

18             permissible under the statutory and common law alleged in this Complaint, in an

19             amount to be established at trial, except that Plaintiff does not seek damages at this

20             time for violations of the California Consumer Remedies Act, Cal. Code Civ. Proc.

21             § 1750, *et seq.*;

22      e.     An award of pre-judgment and post-judgment interest at the maximum rate

23             allowable by law;

24      f.     An award of reasonable attorneys' fees and reimbursement of costs incurred by

25             Plaintiffs and their counsel in connection with this action; and

26      g.     such other and further relief as the Court deems just and proper.

27

28

1

## JURY DEMAND

2

      Plaintiffs hereby demand a jury trial on all claims set forth above to the extent they are

3

entitled to a trial by jury.

4

5

DATED: March 10, 2015                   _____/s/_____

6

7

                         TODD M. SCHNEIDER (SBN 158253)
                         tschneider@schneiderwallace.com

8

                         MARK T. JOHNSON (SBN 076904)
                         mjohnson@schneiderwallace.com

9

                         **SCHNEIDER WALLACE COTTRELL**
                         **KONECKY WOTKYNS LLP**

10

                         180 Montgomery Street, Suite 2000
                         San Francisco, California 94104

11

                         Telephone:    (415) 421-7100
                         Facsimile:    (415) 421-7105

12

13

                         ***Attorneys for Plaintiff***

14

                         _____/s/_____

15

                         SHANON J. CARSON
                         scarson@bm.net

16

                         ARTHUR STOCK
                         astock@bm.net

17

                         **BERGER & MONTAGUE, P.C.**

18

                         1622 Locust Street
                         Philadelphia, PA 19103

19

                         Telephone:    (215) 875-4656
                         Facsimile:    (215) 875-4604

20

                         ***Attorneys for Plaintiff***

21

22

23

24

25

26

27

28

-24-